Tony Orlandi for the Plaintiff Appellant Davis Neurology. You can adjust that podium if you wish. There's a button on the right that moves it up and down. Thank you. Is that more comfortable for you? There we go. It is, thank you, Your Honor. All right, you may proceed. Sure, to begin, I'd like to reserve approximately five minutes for rebuttal. Well, the way we do it is you just have to watch your own time, and you can cease when you wish. But if you use it up, then there won't be any remaining. Very well. Yeah. Your Honor, as the court's aware, there are two issues on appeal today. The first, a threshold jurisdictional question. The second, an issue about the merits of the case. Right out of the gate, I just want to distinguish this case from the last one the court heard. There is no issue of prior consent or an EBR in this matter. It involves a wholly unsolicited fax sent to the plaintiff, Davis Neurology, which is a licensed neurology practice in rural Arkansas that Davis Neurology received from the defendant. The first question, the jurisdictional question, is really whether this case should have been remanded the second time. Whether the defendants were entitled to essentially undo a decision they'd made earlier in the case, which was to undermine their own removal petition by alleging that, or asserting that the plaintiff hadn't alleged a sufficient injury in fact, or concrete and particularized injury. There are a couple points about this record that need to be made up front. First is that the defendant's argument seems to be premised on the notion that it first learned after the district court's removal petition, that the plaintiff had said some magic words that the defendants identified at page 26 of this record in a footnote. That's actually incorrect. The plaintiff said the exact same words that are contained in that footnote, page 26 of the record, at page 436 of this record, in a joint statement to the court. Wherein the plaintiff said, we are indeed seeking the recovery for injury in fact, relative to this fax. So to the extent that there's any issue about this, that settles it. And in fact, that was one week after the Spokio decision. And one week before the defendants filed their motion for judgment on the pleadings, wherein despite the plaintiff's assertion to the contrary, they contended that the plaintiff was not trying to get recovery for injury in fact. Does the complaint actually allege injury in fact? The complaint doesn't say those words, but it inheres in the transmission of a fax. When the plaintiff alleges I received a fax, it inheres in that, that it was the plaintiff's toner, the plaintiff's sink, the plaintiff's fax machine that was utilized. You don't think you have to allege any of that? You think it's- We don't have to. Would you say it inheres in the allegation? We would, your honor. Although, at this point, certainly going forward after Spokio, it's prudent for plaintiffs to include such an allegation. But it's really gilding the lily, as far as we're concerned. It inheres in it. And again, to the extent that there was any, if what the defendants are saying is, well, we just didn't know, we hadn't seen any paper in this record that indicated that the plaintiff was trying to recover for injury in fact, such as paper, toner, and ink. We said that. We said verbatim the same words that they claim made it first ascertainable after remand, that that's what we were looking for. In the Rule 26 report, you mean? Yes, in the Rule 26 report, exactly. Yeah, no, my question really was whether you have standing, whether you've alleged that in the complaint. We have alleged standing, your honor, and our position's been that all along. And apparently, it's the defendant's position as well, because it's the defendants that brought it back up a second time. I know. And they don't seek to- I know, but you can't stipulate the standing. So I just wondered if you don't allege anything about paper, toner, and the like, whether the complaint adequately alleges that. Sure, with the caveat that I don't have the cases at my fingertip, there is authority for this, that this inheres in the transmission of the facts. And in fact, if the court goes back to even the passage of the 1991 act, that was one of the issues that precipitated the passage of the TCPA in the first place, was the gumming up of small businesses' fax machines, the use of their paper, toner, and ink. And that's something that this court also recognized in a 2003 decision, Missouri-Exrail-Nixon, where it indicated that the act withstood constitutional challenge in part on that basis. That that was part of the motivation for the passage of the act. So the plaintiff in this case is precisely the type of small business that Congress was seeking to protect from that type of injury. And the backdrop here, Your Honor, is the default principle that under 28 U.S.C. 14, oh, sure. This is not fair, but I still have this question. You say it inheres in the facts, and you just take that out of the term we receive the facts. But aren't there all kinds of folks today that are using voice over internet, and so you can have an e-fax, and then you aren't using any paper, toner, or anything else. It just comes as a fax to your computer, because it's all going over the internet? I'm not sure what the case law says about an e-fax, but this case involves a paper fax. That is not in dispute in this record. Does the complaint allege that? Yes, and the complaint attaches the, well, the complaint attaches the fax that was received on a fax machine at a fax number. That is alleged in the complaint, yes. Just to come back, so the default principle with respect to remand orders is that under section 1447D, that those remand orders are unreviewable on appeal or otherwise. And while it's not a provision that we say in the briefing, the defendants did argue this, in fact, to the district court in October 2016, pointing to that provision. And what that indicates is that when a district court remands a case, that that order is meant to be final, unreviewable, and not subject to collateral attack. What the defendants are essentially trying to do here was come up with some sort of end run around that by waiting for us, the plaintiff rather, to essentially repeat something that we had said prior to the remand order as an excuse to pull it back up. And under the plain reading of 1447, that remand order originally should have been final. And the case under 1446B3 did not first become removable at that point. It was already clear because the defendants, in fact, removed it, and because we'd made whatever representations we needed to make after the case had been removed the first time. I'd like to turn quickly to the rule 12 argument. So, as the court knows, the district court's obligation here was to construe all the allegations in the complaint, in their totality, to assume that they were all true, and to draw reasonable inferences in our favor. Well, this complaint, there's really no fair way to read this complaint, is not alleging a plausible theory, largely based on the defendant's own words, that the facts at issue essentially functioned as a Trojan horse to solicit customers to make them part of Dr. Directory and to market them promotional materials. If the court looks, for example, at paragraph 12, we allege that by using any part of Dr. Directory's website, users agreed to a privacy policy that the website's purpose was to collect data for marketing purposes. Paragraph 13, we quote from their user's agreement, which states that Dr. Directory, in fact, uses numerous means, such as faxes, to collect usage data and contact and usage data. Paragraph 14, that it shares this information with third party advertisers. Paragraph 15, that it collects personal info for promotional purposes. And that by virtue of responding to the survey, that the user consents to receive ads from sponsors. Paragraph 18, we indicate, again quoting their own words, that site users agree and expressly consent to Dr. Directory's use, collection use, and disclosure of that information. Paragraph 17, again quoting their own words, we indicate in essence that once Dr. Directory successfully lures someone using this survey to complete the survey as a condition of the honorarium, it uses the contact info to send promotional and marketing materials to that user. Paragraph 23, again quoting everyday health, here quoting everyday health's own words, it acquired Dr. Directory to enhance its ability to link advertisers to healthcare professionals. Paragraph 25, we explicitly allege that as the privacy policy makes clear, that the facts at issue functioned as a mere pretext for advertising the commercial availability or quality of Dr. Directory services and the collection of users' private information for use in commercial advertising. Now most of this, again, your honors, is in the defendant's own words. We're not picking this out of thin air. Our position is the defendants represented in their own words what they were going to do with a response to this survey. And that all the court needs to do is credit those allegations and this is a plausible theory. We just need to chin the bar at this point. We don't need to prove that the facts was an advertisement. We just need to show a plausible theory, which there certainly is, based on well pleaded factual allegations. Not a bare indication or pretext that this functioned as an advertisement. I don't know if the court has any questions there, but I'm about five minutes to go. You mean you wish to save the rest for rebuttal? I can save the rest for rebuttal unless the court has questions. Yeah, thank you. All right, very well, thank you. Mr. Zetouni, we'll hear from you. Thank you, your honor. This podium's going to get a workout today. May it please the court, my name is David Zetouni and I represent DrDirectory.com and Everyday Health, the defendant's appellees in this case. Unless the court would like me to address it in a different issue, I'll address the subject matter jurisdiction issues first that were raised by the plaintiff and I'll move on to the judgment on the pleadings. For the subject matter jurisdiction issues, there's really three main points that I think need to come across from the plaintiff's argument here. First is an understanding of the progression of the case. They've made a lot of an initial remand and not understanding why that remand occurred. And then they've alleged that that remand should not have been undone by a re-removal. But second and more importantly, from that is going to come an argument about circularity. Ultimately, and once we start going through the progression here, I think it'll become very apparent, their argument becomes there was always subject matter jurisdiction. Judge Miller committed some kind of error by remanding and that error should not be reviewable by this court once we are on re-removal. But their admission here appears to be that there is subject matter jurisdiction because there is injury. But to put this in context, if you bear with me for a minute, I'm going to go through a very convoluted history and try to condense two years down to about a minute or two minutes. So the concern here on subject matter jurisdiction started with the filing of the complaint in January 2016 pre-Spokio. The complaint referenced the CFR, the fax regulations of the CFR, in only a couple of places. So paragraph 28, paragraph 41-2, and then paragraph 46. But the provisions that they referenced, the only provisions that they referenced, was 47 CFR, 64.1200, A-4-3, and A-4-4. Those are the two provisions that deal with the notice, the opt-out notice that goes at the bottom of the fax. They did not reference any provisions in their count. They didn't reference any provisions in their discussion of their theory of the case that they were going on an unsolicited fax case. That's where the ambiguity sparks. The problem that we had is, as of January 2016, saying a pure statutory violation, which is what that appeared to be. There was no allegation that they tried to opt out, like what happened in NOMAX. There was no allegation that there was a material deficiency in that opt-out notice, also what happened in NOMAX. This was a pure, you forgot to put three or four words in your opt-out, that it would be unlawful for you to honor an opt-out request if it ever occurred. As of January 2016, it was a pure statutory bounty. That may not have been an issue in January 2016 for subject matter jurisdiction because of this court's holding in Golan v. Veritas Entertainment, where the suggestion of that case was that you could proceed on a pure statutory bounty. May 2016 comes around with the Spokio decision, and the Supreme Court makes clear you have to have concrete and particularized injury, caused us to have to look back at the complaint and do what we are obligated to do as officers of the court, raise new law to the district court, the fact that Spokio had been rendered, and raise the issue about whether the court had subject matter jurisdiction, and raise the ambiguity of the fact that their only count dealt with the notice, not with an unsolicited fax that had been sent. Judge Miller decided not to hold a hearing. He didn't hear oral argument. What he did is remanded it sua sponte and said, I think there is doubt, and because there is doubt, it has to go down to state court until that doubt is resolved. On the state court side, we diligently proceeded to resolve it by immediately filing a motion for more definite statement to require them to say whether they were actually alleging injury, which would come out of an unsolicited fax with no consent, or whether this was just about having a deficient notice and opt-out. Strategically, I'm not sure exactly why, but they objected to the motion for more definite statement. They didn't want to have to say in state court, but they objected on the grounds of mootness. They said it's moot. Of course we are alleging an actual injury, and that actual injury is in addition to the statutory violation, the statutory remedy. That caused us to have to decide whether we were going to re-remove under 28 U.S.C. 1446 B.3, or wait for the court to solve our motion for more definite statement. Obviously, if we waited and had the judge force them to say what they just admitted to you here today, which is this is about an unsolicited fax, the argument before us would have been that we had waived, because we had gone past the 30 days that we were required to re-remove. We re-removed. We are now before this court after Judge Miller looked at the merits of the case. And so what it comes down to is we now all have clarity about what the case is about. It is not a 47 CFR 64.1200A 3 and 4 case, which is what was in the complaint. It is as counsel just represented to you. This is about an unsolicited fax having been sent, and the paper and toner that it took, and the damages they suffered. That is a 6200A 4 1 and 2 case. Unfortunately, it took two years to get that clarity, but we have it. And now that we have it, subject matter jurisdiction is frankly not even being contested. They claim they've been injured. We acknowledge that they allege that they've been injured. With injury that's concrete and particularized, subject matter jurisdiction exists. Well, the complaint didn't change. It did not, Your Honor. And as counsel pointed out, the sentence that you rely on, or the footnote that you rely on, seems to have the same wording as this Rule 26 report from May. That's also correct, Your Honor. So then why isn't the second removal notice untimely? Your Honor, second removal can be based not about a complaint changing, but about any other papers or filings. And it was not just the sentence that they pointed to. There were a couple of other factors here. Well, that's what you say in your brief. It's that you have a block close. It is the sentence, but it's in the paper in which it was filed, Your Honor. They filed an opposition to a motion for more definite statements saying it was moot. The conclusion of the more definite statement that was filed was whether or not they had particularized and concrete injury. The fact is they said it's moot, and it's moot because we really are alleging injury in fact. Now, to go to counsel's point, why wasn't their earlier statement in the report to the court, where they use that same alleged injury, why wasn't that relevant? Well, there's two reasons, Your Honor. First, if you look at the citation that they cited in the report, this is back in May of 2016, they cite back to the complaint, the same portion of the complaint where they cite the wrong CFR provisions. So, again, we're left with this ambiguity. Are you saying you've alleged injury, but you're alleging injury on a theory that doesn't exist under the wrong CFR provision? And, again, this is why we raised it to the court. Now, to assert to you, Your Honor, Judge Miller may have gotten it wrong on the original remand. There's an argument to be made that he should have seen what they did in that report, and he should have either done a hearing, an evidentiary hearing, and asked them or made them file a more definite statement. We did not ask him to remand. That was sua sponte by Judge Miller. But you're stuck with it, right, under the statute. There's no appeal from that. There's no appeal from a remand order unless another paper is filed, which clarifies, and that's 28 U.S.C. 1446 C. But if the problem wasn't clarification, the problem is just error, as you suggested, then you're stuck with the remand. What I'd suggest is that his procedure was error in that he could have solved the subject matter jurisdiction issue a year and a half ago if instead of sua sponte remanding, he decided to hold a hearing. Instead, what he said in his remand order is not that there's not subject matter jurisdiction. He said there's doubt. I'm going to remand it for the state court to figure out that doubt. Well, what else could the state court do but take a motion for a more definite statement where we say, Your Honor, to the state court, we need to resolve this doubt? That gets opposed, which is quizzical. Why is there so much argument here about what they were actually alleging for injury? But the grounds for the opposition is the first time we heard them enunciate a legal argument that they really were proceeding on an actual injury. Your Honor, if there's no further questions on subject matter jurisdiction, I will turn. Well, I did have one other question. Why do you think Article III standing is part of the removability analysis? If you look at 1446, it talks about any civil action in which the district courts have original jurisdiction. That's what can be removed, right? That's 1441. In which it's first ascertainable. That's 1441, yes, Your Honor. No, first ascertainable is the... 1446. Yeah. But when the statute talks about what's a removable action, it says a civil action of which the district courts have original jurisdiction. And then 1331 says the district courts have original jurisdiction in federal question cases, and 1332 says there are 33 in diversity and so forth. Yes, Your Honor. And this would have been a federal question case, Your Honor. So the federal question, of course, is TCPA. Isn't it a civil... Whether they're standing or not, is it a civil action of which the district court has original jurisdiction? And then standing is a separate question? Your Honor, if I understand your point correctly, it would be that you could originally remove this under 1446B because you have an original federal question. Once it's remanded based on a lack of standing, the query is, how do you re-remove once you've established that there is subject matter jurisdiction for a federal court? And I would assert if that is... That's roughly it. Another way of saying it is it was always removable, and the standing issue doesn't affect removability. It may affect whether it's dismissed and remanded, but it doesn't affect removability. And I think that's correct, Your Honor. So it's always removable in federal question, at least within the 30 days that you can first ascertain. The standing issue, if it does not go under 28 U.S.C. 1446, if that can't be a grounds for removal, I would suggest we have a very odd problem under the U.S.C., which is you can have removal, which we did timely on a federal question. You have a judge which has doubts about whether or not there's appropriate subject matter jurisdiction, and once those doubts are resolved, there's no way for the judge to exercise his subject matter jurisdiction. It basically would create a loophole that any plaintiff could file a deficient complaint in state court on a federal question with deficiencies in the injury section, get it removed, it would go remanded, and you can never get back to federal court. I'd suggest, and this is where I was going with procedurally, not to criticize Judge Miller, procedurally this was inelegant in terms of resolving the issue of subject matter jurisdiction. I think preferably from a procedural standpoint, the preferred course would have been for Judge Miller to resolve the standing issue beforehand and not say there's doubt figured out in state court, because that begs the question of once it's figured out, we have to re-remove. Or if we do figure it out, if it's unremovable, what do we do? Inelegant, improvident, I don't know, you don't want to say the word, but if it's an improvident remand, and in fact the statements are very similar, isn't it a more appropriate tool to request a reconsideration of the order of remand procedurally rather than the process that you went through? Because then the judge, you can say, Judge, it should have been a hearing. They've said this, they've said that. And you don't end up in the sort of problem that you've said, where there's been a remand, then there's further development, then there's a re-removal. It seems to me that reconsideration, timely brought, is a much more efficient tool for this job than the re-remand. Because the problem with, if this were some order that was subject to review or appeal, maybe re-removal is a more appropriate process. But I mean, the way it's set up, there doesn't seem to be a way to contemplate it. That if the judge exercises discretion improvidently in the remand, right? Your Honor, I suggest, I don't have the text of 28 U.S.C. 1447D, but my recollection is it says, a motion for remand is unreviewable by appeal or otherwise, is my recollection. Right, with an exception that's not applicable here. Or otherwise. The concern there is . . . An order remanding a case to the state court from which it was removed is not reviewable on appeal or otherwise, except that . . . Yeah. And I don't know that . . . You think a motion to reconsider is a review on appeal or otherwise? Your Honor, I do, and I'll tell you as a practical matter, once the case is closed by the district court and the file is closed, it is hard to get a motion for reconsideration. And in addition, we have the issue of 28 U.S.C. . . . Maybe you're just blocked by the fact that Congress said you can't get review of the order. If it was improvident, doesn't that happen not all the time, but doesn't that happen from time to time? District courts maybe erroneously remand cases and the parties are stuck in state court. Your Honor, I'm not aware of any situation where a second remand that is based by an action, and this isn't just a statement, it's also an action of them by saying it is moot, the issue of injury. I'm not aware of any situation where you re-remove, and then the argument has been that it is blocked because there is no procedural ability to re-remove on subject matter jurisdiction grounds. I'll say the reverse, and I don't have any cases here, but we'd be happy to brief it. I would wager there are many situations where subject matter jurisdiction has been found lacking. It has then been found on the state court level to exist at a later point in time, and it is brought forward. The key point here, though, and I realize I'm going short on time without addressing the merits. Well, we might give you some more time because this is important, but go ahead. Go ahead on the jurisdiction. The key point here is as of the parties standing today, we all agree subject matter jurisdiction exists in the federal court. There is no Article III argument in this case that there is no concreteness and there is no particularity. That's a little confusing to me, too, because you moved for judgment on the pleadings originally on the ground that there was no injury, and the complaints never changed. What's changed, though, and this goes to- Some other pleading can't change what's in the complaint. No, Your Honor. The complaint adequately alleged an injury. 28 U.S.C. 1446C, again, contemplates it's not just a change in the complaint that can change the facts around what the case is. No, that's on when you can remove, but I'm saying that your original motion was that the complaint was inadequate. And, Your Honor, I'd submit- And the complaint has never changed. The complaint has never changed, and the analysis of subject matter jurisdiction that courts conduct is hardly ever bound by the four corners of the complaint if, during the course of litigation, the facts evolve. An example of this is NOMAX. Their complaint was entirely different than the case that they are presenting to you today. Their complaint actually includes a Count I, which is an unsolicited fax, and a Count II conversion, although today Count I and Count II have basically gone away, not from an amendment of the complaint, but because of admissions during the course of litigation. Here we have a complaint that was originally filed, which was pointing to the wrong sections of the CFR, sections that we would say there is no subject matter jurisdiction on. We brought it to the court by saying this is, at best, ambiguous. At worst, if we don't understand the theory of the case, they don't have subject matter jurisdiction. It gets sent back to state court, and in state court, what starts coming out is what they said today, and they've never enunciated it in a straight shot, which is this is an unsolicited fax case under 47 CFR 64.1200A41 and 2. So what I'd assert, Your Honor, is we were left in a quandary, and we had a very bad complaint that seemed to be pointing at the wrong legal theory from what they're currently asserting. We were obligated to bring that issue to the district court, which we did. The district court chose to resolve it by saying there is doubt. This is a bad complaint. Go back to state court. In state court, we asked the state court to move them for a more definite statement to amend their complaint so that it would become more specific, and yet they contested that, and they said, no, we don't need to amend it. It is perfectly fine. Again, I'd say what they were trying to do is game the system so that nobody knew what they were really alleging, and we couldn't figure out whether we could remove or not remove. All right. Do you want to address the merits briefly? Yes, Your Honor. Why don't we put three minutes on the clock and see if you can make your main points? Your Honor, the key issue on the merits is a simple statutory construction one. So under 47 U.S.C. 227A5, we have the definition of an unsolicited advertisement. That definition has certain components to it if you're going to give effect to every term. There has to be a material that's advertising. It has to discuss commercial availability or quality, and it has to relate to a property, good, or service. The first problem here on the merits is we have a fax, which nowhere does it have any advertising, which the FCC has interpreted as saying offering something for sale. Nowhere on it does it discuss commercial availability or quality, and nowhere on it does it refer to a property, good, or service. Do you disagree then with the FCC's pretextual surveys and seminars and lunches and investors and all that line of examples? Your Honor, I agree with the statement the FCC made, which is pretexting can exist, and the FCC gave as an example situations where you'd have a survey that's not really a survey. What the FCC never did in their interpretation, nor could they, is take away the standard in Twombly and Iqbal and say you can't just put that pretexting exists. You have to allege actual facts that make it probable, at least plausible, not speculative. That's really where we get to the meat of it today. Out of all the arguments they advanced on why this is pretextual, why there were enough facts alleged, they only advanced one on appeal. They seemed to have dropped everything else that was in their brief. The one they pointed to is the privacy policy in terms of use that they cite at paragraph 12, note one of their First Amendment complaint, and they say this is it. This is what brings us over the speculative level. There's a number of problems with that, not least of which is the privacy policy they cite on the footnote says www.drdirectory.com. The facts that was sent directs people to a link that's not at that domain. It's www.ddstudy.com. They never allege that Davis Neurology went to the link. They never allege that link had the privacy policy. They never allege he was prompted with terms of use. They never allege he saw in the advertising. They basically invited the district court to say look at a company's privacy policy, and if in there it says one of the many uses they use for information in all kinds of contexts is marketing, then you can speculate that in this case this is really pretextual, had nothing to do about a survey, and instead what we're dealing with is a marketing campaign. Judge Miller correctly looked at the facts, and he said it's got to suggest something that deals with marketing, and it doesn't. There just is nothing on the face of the facts that looks anything but what it is, which is a research survey. Unless there's any further questions, Your Honor, thank you very much. All right, very well. Thank you for your argument. Mr. Orlandi, do you care to make a rebuttal? I am, Your Honor. Thank you. You can readjust that podium if you wish. All right, a few points with regard to the jurisdictional matter. Well, the first is that we did plainly allege in this complaint that it was an unsolicited fax. We did so at paragraph 10. We also alleged in paragraph 27 of the complaint that we alleged that it was an unsolicited advertisement in paragraph 10, and we alleged in paragraph 27, which is at page 37 of the record, that it was wholly unsolicited. One point about the district court's order of remand, the defendants characterized that order as expressing some doubt about subject matter jurisdiction. The court actually looks at that order. That's not what Judge Miller said. What Judge Miller said was the defendants are taking a contrary position. It's their burden to show that this court has subject matter jurisdiction, but they are now taking in their subsequently filed motion for judgment on the pleadings a contrary position that this court lacks subject matter jurisdiction. He therefore remanded the case for lack of subject matter jurisdiction. The word doubt doesn't appear in there. It gets revived, though, on the re-removal, because then Judge Miller characterizes his first order somewhat differently than what you might read the first order as being, because in the second order he does, in fact, say that he remanded it for clarification or further development on that issue. You're absolutely right, Your Honor. They are in tension with each other, frankly, but the court speaks through its orders. Now, if what Judge Miller was indicating was I've thought twice about the original basis for remand, well, that gets to your question earlier about sort of the propriety. Was this a provident remand in the first place? Well, that gets right into something that the Supreme Court has spoken on with respect to 1447D, which was, it's not cited in our papers, but it's a case called Kircher v. Putnam Funds Trust, 547 U.S. 633. And what the Supreme Court said there in 2006 was that the policy of Congress opposes the interruption of litigation of the merits of removed cause by prolonging litigation of questions of jurisdiction of the district court to which the cause is removed. And the court then continues and says, we've relentlessly repeated that any remand issued on the ground specified in 1446 is immunized from all forms of appellate review, whether or not that order might be deemed erroneous by an appellate court. It also says that as long as the district court is purporting to remand on an allowable basis under 1447C, which would include lack of subject matter jurisdiction, review is, this is a quote, review is unavailable no matter how plain the legal error in ordering the remand. So if the court's conclusion, and we would agree with this, that the better approach would have been to give notice to the parties and perhaps maybe even have a conference with us about it, so be it. But that doesn't change the backdrop that Congress set up. What the defendants are essentially asking this court to do is to legislate a new exception to section 1447D. I'll turn briefly to the merits of the complaint. It's difficult, Your Honor, for us to come up with a better way to plausibly allege that the facts functioned as a pretext to an advertisement, which is a premise, by the way, that the defendants have said they accept as articulated by the FCC. But for quoting the defendants in their own words and saying, it's a fair inference that you're going to do what you are proclaiming you will do in what purports to be privacy terms to which anyone agrees by completing the survey or accessing Dr. Directory's website. Don't you think this is really a lure or bait for future advertising? In part, yes. If you read their website, isn't that what they're really doing? That is part of what they're doing. Isn't that a big part of what they're doing? A very big part of what they're doing. I would say the other part, Your Honor, is they are getting people to give up rights, to become customers of the company. So it's actually different than, say, the steak dinner example where, I believe it was in Stryker, they invited people to a steak dinner and then at the steak dinner you get the pitch. Well, at least there, the person who goes, who responds and goes to the steak dinner, has the opportunity to reject the offer. Here, as a condition of receiving the honorarium, our allegation is when you click through, you actually are giving up rights. You are consenting to become part of their doctor's directory, not just to receive promotional materials. Be that as it may, I don't think it undermines the point to say that the purpose still was to promote their own services via this lure, whether it's one step removed or two. And if that's it for the Court, I will rest. Thank you. Any other questions? Thank you, Your Honor. Very well. Thank you both for your arguments. The case is submitted and the Court will file an opinion in due course.